**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Tricolor Holdings, LLC, Tricolor Auto Group LLC, and Ganas Auto Group, LLC, | |
| Plaintiffs, | Case No. 1:20-cv-3127 |
| | **COMPLAINT** |
| -against- | |
| | **JURY TRIAL DEMANDED** |
| Ai Media Group LLC, | |
| Defendant. | |

Plaintiffs Tricolor Holdings, LLC, Tricolor Auto Group LLC, and Ganas Auto Group, LLC (collectively "*Tricolor*" or "*Plaintiffs*") for their Complaint against Defendant Ai Media Group LLC ("*Defendant*"), allege as follows:

**INTRODUCTION**

1.       This case concerns digital marketing services. Tricolor is an integrated retail auto and finance company, which relies heavily on data and analytics to generate sales leads. On an increasing basis over the past six years, Tricolor has targeted potential customers using a data-driven marketing strategy. Historically, Tricolor utilized both in-house resources as well as third parties to execute this strategy. In 2019, Defendant solicited Tricolor and represented that it had developed patented, state-of-the-art technology similarly and could manage Tricolor's digital marketing more effectively. These and other representations induced Tricolor to outsource its digital marketing to them. Tricolor and Defendant thereafter signed certain Internet Advertising Orders with target start dates of April 1, 2019, October 1, 2019, and February 1, 2020 (collectively "*the Agreement*").

2.      Defendant failed miserably in attempting to perform its contractual obligations, leading to increased customer acquisition costs, lower lead generation, and decreased sales performance for Tricolor.  Indeed, at one point, Defendant's poor advertising services caused Tricolor's digital leads to drop by sixty percent.

3.      In light of Defendant's performance failures, and Defendant's refusal to provide any transparency regarding its actual spend on services it provided to Tricolor, and upon information and belief, Defendant has misrepresented its capabilities and the value of its services, and has improperly inflated the invoices it provided to Tricolor.

4.      As a result, Defendant has materially breached the Agreement and caused Tricolor to incur substantial damages.

5.      Alternatively, Defendant has breached the duty of good faith and fair dealing implied into the Agreement by failing reasonably to minimize the actual costs it incurred, and billed to Tricolor, for services provided under the Agreement.

## PARTIES

6.      Plaintiff Tricolor Holdings, LLC is a limited liability corporation organized and existing under the laws of the state of Delaware. Tricolor Holdings, LLC is 100% owned by Ganas Investors LLC, whose members are Daniel Chu, a Texas resident, and Tricolor Investors. Tricolor Investors is a Texas limited liability corporation, whose members each reside in the state of Texas.

7.      Plaintiff Tricolor Auto Group, LLC is a limited liability corporation organized and existing under the laws of the state of Texas. It is 100% owned by Plaintiff Tricolor Holdings, LLC.

8.      Plaintiff Ganas Auto Group, LLC is a limited liability corporation organized and existing under the laws of the state of Delaware. It is 100% owned by Plaintiff Tricolor Holdings, LLC.

9.      Defendant is a limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business in New York, New York. Upon information and belief, each of Defendant's members reside in New York and/or Connecticut.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction based on 28 U.S.C. § 1332. Plaintiffs are each citizens of the state of Texas because their members reside in the state of Texas.  Upon information and belief, Defendant is a citizen of the state of New York and/or Connecticut, with its principal place of business located within the Southern District of New York. In addition, the amount in controversy exceeds $75,000.

11.     This Court has personal jurisdiction over Defendant. Defendant maintains its principal place of business in New York and purported to render the services in dispute from a location within the state of New York.

12.     Venue is proper in the Southern District of New York. Defendant maintains its principal place of business in the Southern District of New York and purported to render the services in dispute from a location within the Southern District of New York. A substantial portion of the events giving rise to this lawsuit occurred within the Southern District of New York.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**A.      Tricolor and digital marketing.**

13.     Tricolor is a private company established in 2007 that has become the nation's largest used vehicle retailer which focuses on the sale and financing to the Hispanic consumer. Tricolor provides its customers with access to affordable financing on high quality, certified vehicles. Since inception Tricolor has served over 50,000 customers and disbursed over $1 billion in affordable auto loans by using its proprietary underwriting model.

14.     Certified by the Department of the Treasury as a Community Development Financial Institution, Tricolor uses advanced data analytics to promote financial inclusion to an underserved Hispanic market and offers responsible, affordable, credit-building loans to individuals with no or limited credit history. The use of data-driven technology has enabled Tricolor to complete five term ABS securitizations, the most recent of which was a rated securitization underwritten by Credit Suisse.

15.     With this deep experience in data analytics, Tricolor has significant internal resources to assess the competency of the digital marketing services provided by Defendant. This data-driven strategy focuses on identifying potential customers through advertising on search engines like Google, Yahoo, and Bing, and on social media websites such as Facebook and Instagram. These digital leads have an established pattern of generating sales, assuming that digital marketing is managed competently. Moreover, digital leads represent the proverbial "lifeblood" for a company like Tricolor, having generated approximately 75% of Tricolor's leads over the past year. The cost of converting a lead to a sale depends on quality of the digital marketing management, and efficient digital marketing contributes materially to Tricolor's financial performance and sales.

16.     As a result of its experience in digital marketing, Tricolor understands fully the effort and expense necessary for digital marketing performance. The cost per lead and the conversion rate are key metrics for measuring the performance of digital marketing.

**B.**     **Tricolor outsources digital marketing to Defendant.**

17.     Defendant is an internet marketing company that claims to specialize in managing and executing digital, or online, marketing strategies and patented technology. Defendant claims to have vanguard machine learning software that provides clients with analytical feedback to optimize spend. Tricolor, however, had a profoundly different experience with Defendant.

18.     In 2019, Defendant met with Tricolor and represented that it had developed superior patented technology to what Tricolor had previously implemented internally and could manage Tricolor's digital marketing more efficiently and effectively. Defendant made a series of misrepresentations, including those described herein, that induced Tricolor to engage them for its digital marketing, as alleged in this Complaint.

19.     Defendant repeatedly represented that it would bill on an actual cost-plus basis and that the invoices would include third-party expenses that Defendant had actually paid for Tricolor's digital marketing.

20.     Defendant further represented that its program allowed for Tricolor to have full visibility and transparency into all aspects of the digital marketing process and that Tricolor would have complete transparency as to costs per lead, how leads developed, conversion rates, and other data relative to digital marketing. Defendant claimed that it would improve the same level of sales conversion that Tricolor had previously experienced with full transparency as to all costs.

21.     Defendant further represented that it had deep and broad partnerships with Google and Bing, and strategic relationships with all of the top search and media networks.

22.     Defendant further represented also that it would track Tricolor's purchasers across all networks and all channels real-time and stated that Tricolor would have the ability to track its customers through the funnel from top to bottom. And, Defendant claimed to have the best analytical reporting and analytics in the industry.

23.     Defendant further represented that its systems allowed complete and transparent visibility for Tricolor to view the consumer journey from start to finish. According to Defendant, Tricolor would receive an attribution system that allowed for the most effective optimization. Defendant represented that Tricolor would be able to continually market to users who changed

from one device to another by using unique identification system that tied back to geography, network, devices, and keywords for the most effective campaign optimization possible.

24.     Based on these representations, Tricolor and Defendant signed the Agreement. Under the Agreement Defendant was to provide its patented technology, ad creation, media placement, keyword research and purchasing, attribution analysis, audience management, data analysis, performance optimization, data and reporting services, and landing pages.

25.     The Agreement expressly provides that Defendant's invoicing and service fee are based on actual monthly spends.

26.     The Agreement calculated the cost-plus service fee at ten percent of the gross monthly program budget.

**C.      Defendant's deficient performance and deception.**

27.     Defendant never provided the required services and plainly, upon information and belief, lacked the technology, skills and expertise that it represented. Worse yet, Defendant billed Tricolor on a cost-plus basis and then refused to confirm the amounts actually paid for Tricolor's digital marketing. Tricolor has requested on multiple occasions for documentation confirming the actual costs purportedly paid and received nothing but stonewalling.

28.     In multiple ways Defendant failed to provide the required services and represented it had the ability and expertise to perform. Certain examples are described below.

29.     Defendant never created any end-to-end visibility that could track a particular ad through the sales funnel to a specific sale. This information is critical to assessing and optimizing the lead generation process. Tricolor attempted, on multiple occasions, to provide Defendant with lead identification numbers in whatever format Defendant needed in order to determine the effectiveness of Defendant's strategy, but Defendant never adequately responded. With no visibility as to the end results of these leads, Defendant had woefully inadequate and insufficient

information to evaluate performance and could not know how to optimize keywords. More than eighty percent of visits to the Tricolor website originated from people searching for the company's name, and Defendant made no other recommendations that would reflect optimization or any other strategy being implemented.

30.     Over one three-week period, Tricolor's digital leads dropped by sixty percent, yet Defendant did not advise Tricolor of any drifting or shift in volumes. After Tricolor discovered this precipitous reduction, Defendant absurdly claimed that Honda was advertising heavily in Los Angeles and was driving up advertising costs. But if Defendant's analytics had effectively revealed Tricolor's customer patterns, Defendant would know that Honda is unable to sell cars to consumers with the profile of a Tricolor customer, and no reason existed for Honda's marketing to present a competitive issue for Tricolor.

31.     Technical deficiencies and the absence of follow-through on promised action abounded. Moreover, Tricolor had to initiate the vast majority of communication on advertising issues and repeatedly reached out to get the end-to-end funnel completed. In mid-February 2020, these discussions were still ongoing. But there should not have been any marketing spend initiated until Defendant fully completed the end-to-end sales funnel so that Tricolor would actually have the visibility to know its return on investment.

32.     Defendant was also supposed to provide reports and detailed analytics on lead generation performance. That did not occur until March 2020, many months after the engagement commenced—and only when the relationship had deteriorated and a dispute had arisen regarding the actual costs incurred and lack of supporting documentation.

33.     In most, if not all instances, when Tricolor communicated about declining performance, Tricolor's inquiries merely resulted in multiple emails without resolution of why

7

lead generation performance had declined or why Defendant had failed to provide the promised information.

34.     In light of Defendant's performance failures, its refusal to provide transparency about its actual third party costs, and upon information and belief, Defendant misrepresented the value of its services, and misrepresented its actual costs in the invoices it provided to Tricolor.

35.     Tricolor properly objected to the invoices at issue in this Complaint. Though the parties have attempted to resolve the issues raised by Tricolor, the parties have been unable resolve the objections.

**D.      Tricolor sustains substantial lost sales.**

36.     These circumstances have resulted in Tricolor and Defendant now having a dispute over what amounts, if any, are owed under the Agreement. And, as a result of this dispute the Agreement was terminated effective no later than April 1, 2020.

37.     Tricolor asserts that Defendant materially breached the Agreement and that such breach excuses Tricolor from performance, that Defendant made false representations and nondisclosures that induced Tricolor to enter the Agreement, and that Defendant sent invoices for costs that exceeded the actual costs paid by Defendant for the Tricolor advertising and then refused to provide documentation of such costs.

38.     Defendant's failure to responsibly manage the internet advertising for Tricolor led to substantial lost sales for Tricolor and other direct and consequential damages. Tricolor is in the process of calculating the extent of damages and estimates that Defendant's actions caused damages in excess of $100,000.

### CONDITIONS PRECEDENT

39.     All conditions precedent to the filing of this lawsuit have been satisfied, waived, or otherwise performed.

<u>**CAUSES OF ACTION**</u>

**A.** **<u>Count One – Breach of Contract.</u>**

40.    Tricolor re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

41.    Tricolor and Defendant are parties to the Agreement. Under the Agreement Defendant was to provide technology expertise, ad creation, media placement, keyword research and purchasing, attribution analysis, audience management, data analysis, performance optimization, data and reporting services, and landing pages.

42.    The Agreement calculated the cost-plus service fee at ten percent of the gross monthly program budget. Under the express terms of the Agreement, Defendant was only permitted to bill a service fee based on actual costs paid for the Tricolor Internet advertising. But instead, upon information and belief, Defendant breached the Agreement by billing for amounts that overstate the actual costs paid, which, in turn, inflated the service fee. Defendant's conduct also materially departs from the customary billing practices of advertising agencies in the industry.

43.    The Agreement also required that Defendant achieve agreed performance objectives, which did not occur.

44.    Defendant materially breached its obligations under this Agreement.

45.    Tricolor complied with its obligations under the Agreement or was excused from performance by Defendant's prior material breach of the Agreement.

46.    As a direct and proximate result of Defendant's breach of the Agreement, Tricolor has sustained substantial direct and consequential damages. Defendant's failure to responsibly manage the Internet advertising for Tricolor led to substantial lost sales for Tricolor and other damages. Tricolor is in the process of calculating the extent of damages and estimates that Defendant's breach of the Agreement caused damages in excess of $100,000.

47.     Additionally, Defendant unjustly enriched itself through, upon information and belief, inflated invoices that sought payment for costs in excess of the actual costs paid.

**B.      <u>Count Two – Breach of the Covenant of Good Faith and Fair Dealing.</u>**

48.     Tricolor re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

49.     The Agreement was a cost-plus contract which, among other things, required Defendant to exercise reasonable discretion in the amount of actual spend required for the services it provided to Tricolor.

50.     Implied in the Agreement was a duty of good faith and fair dealing that obligated Defendant to reasonably minimize its actual spend on the services it provided to Tricolor.

51.     Defendant breached the covenant of good faith and fair dealing by, upon information and belief, failing reasonably to minimize its actual spend.

52.      Defendant's breach has deprived Tricolor of the benefits it was entitled to under the Agreement, causing substantial damages. Tricolor is in the process of calculating the extent of damages and estimates that Defendant's breach of the duty of good faith and fair dealing caused damages in excess of $100,000.

**C.      <u>Count Three – Declaratory Judgment.</u>**

53.     Tricolor re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs as though fully set forth herein.

54.     Tricolor seeks a declaration of rights pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. 2201. Tricolor is an "interested party" and seeks a declaratory judgment regarding the existence or nonexistence of a right, duty, or liability, or of any fact upon which such legal relations depend. Tricolor has a practical interest in the declaration sought. And, all parties having an interest or adversely affected are parties to this suit. As a result, this Court may declare the

rights and other legal relations of Tricolor, whether or not further relief is or could be sought. Such declaration shall have the force and effect of a final judgment.

55.     The Agreement provided for a cost-plus service fee, yet Defendant refuses to provide any confirmation of the costs actually paid. Tricolor asserts that Defendant transmitted invoices for costs that exceeded the actual costs paid by Defendant for the Tricolor advertising and then refused to provide documentation of such costs. In addition, Tricolor asserts that Defendant materially breached the Agreement and that such breach excuses Tricolor from performance.

56.     Tricolor requests this Court enter judgment with the following declarations:

a.     That Tricolor may review all billing and actual payments associated with costs for which Defendant billed Tricolor;

b.     That Defendant's material breach of the Agreement excuses Tricolor from any obligation to pay outstanding invoices; and

c.     That Tricolor has no obligations or liability to Defendant.

## REQUEST FOR RELIEF

Plaintiffs Tricolor Holdings, LLC, Tricolor Auto Group LLC, and Ganas Auto Group, LLC respectfully request:

A.     Actual, consequential, incidental and special damages;

B.     Disgorgement of amounts Tricolor paid to Defendant that were incorrectly billed as actual costs;

C.     Declaratory judgment relief as requested herein;

D.     Pre-judgment, post-judgment interest, and court costs; and

E.     All other relief, whether in law or equity, to which Tricolor is entitled.

Dated: New York, New York
       April 20, 2020

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: */s/ Todd C. Norbitz*
       Todd C. Norbitz
       Benjamin I. Bassoff
       90 Park Avenue
       New York, New York 10016
       Telephone: (212) 682-7474
       Fax: (212) 687-2329
       tnorbitz@foley.com
       bbassoff@foley.com

       James G. Munisteri (of counsel)
       Texas Bar No. 14667380
       1000 Louisiana Street, Suite 2000
       Houston, Texas 77002
       Telephone: (713) 276-5500
       Telecopier: (713) 276-5555
       jmunisteri@foley.com

       *Attorneys for Plaintiffs Tricolor Holdings, LLC,*
       *Tricolor Auto Group Holdings, LLC and Ganas*
       *Auto Group, LLC*

4848-5690-3610